UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

ANDRE JENKINS, a/k/a Little Bear,

    Defendant.

---

**DECISION AND ORDER**

1:15-CR-00142 EAW

## INTRODUCTION

This Decision and Order addresses defendant Andre Jenkins' ("Jenkins") motion for severance or for an adjournment of the trial date, which has been filed under seal. (Dkt. 990). For the reasons set forth below, the Court denies the motion.

## BACKGROUND

Three attorneys were assigned to represent Jenkins in this case, having been appointed under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A. The attorneys are as follows: Barry Nelson Covert ("Covert"), Michael S. Deal ("Deal"), and Herbert L. Greenman ("Greenman"). The history of these attorneys' involvement in this case is summarized below.

In March of 2016, following the filing of the Second Superseding Indictment ("Indictment") (Dkt. 33), Magistrate Judge Michael J. Roemer held an attorney appointment hearing at which Covert was assigned to represent Jenkins. (Dkt. 64). The Government initially sought the death penalty, and therefore, on April 6, 2016, Judge Roemer granted Covert's motion for assignment of co-counsel. (Dkt. 93). The Court

- 1 -

assigned Andrew LoTempio ("LoTempio") as co-counsel for Jenkins, citing 18 U.S.C. § 3005, which provides for the assignment of two attorneys in capital cases, and Section XVI(B)(1) of the Western District of New York Criminal Justice Act Plan, which governs the appointment of counsel in death penalty proceedings . (Dkt. 94).

On April 27, 2016, the Government advised that the U.S. Attorney General had authorized and directed the U.S Attorney's Office not to seek the death penalty against Jenkins and his co-defendant, David Pirk. (Dkt. 163-1 at ¶ 11). As a result, the Government would not file a notice of intention to seek the death penalty. (*Id.*). The Government subsequently moved to remove Jenkins' second court-appointed attorney. (Dkt. 163). On June 22, 2016, Judge Roemer granted the Government's motion and determined that LoTempio would remain as counsel only through the filing of pretrial motions. (Dkt. 191).

On November 21, 2016, Covert moved for an extension of time to file pretrial motions and for the appointment of Deal as co-counsel for the pendency of the case, citing a number of personal matters requiring Covert's attention (including the matter that he cites in the instant motion for severance or adjournment). (Dkt. 363). On December 8, 2016, Judge Roemer granted both requests and appointed Deal as co-counsel. (Dkt. 393). A Text Order that Judge Roemer issued that same day also appointed Greenman as counsel for Jenkins. There is no record on the docket of the discussions among counsel and Judge Roemer surrounding that motion and the appointments of Greenman and Deal, but the Court understands, based on representations of counsel as well as discussions with Judge Roemer, that a chambers conference was conducted due to the personal nature of Covert's

application. The Government has represented that, at this chambers conference, it was contemplated that Covert may not return to the case, and Greenman and Deal would remain on the case through trial. In any event, as of December 8, 2016, Jenkins was assigned three CJA attorneys.

Less than a month later, at a status conference held before Judge Roemer on January 5, 2017, all three counsel—Covert, Deal, and Greenman—appeared on behalf of Jenkins. Judge Roemer inquired about the status of Jenkins' counsel. (Dkt. 496 at 20). The following exchange occurred:

> THE COURT: Where are we on counsel, Mr. Covert? Are you going to be in the case or not in the case?
>
> MR. COVERT: Yes, Your Honor. I would propose that Mr. Deal and I would be co-counsel on the case if that's okay with the Court.
>
> THE COURT: Okay.
>
> MR. COVERT: I have returned now to full-time practice.
>
> THE COURT: And then, Mr. Greenman would not be on the case.
>
> MR. GREENMAN: May I be heard, Your Honor?
>
> THE COURT: Sure.
>
> MR. GREENMAN: We had talk about -- we had a meeting earlier before we came over here and I would be ineligible it looks like, but in Mr. Covert's absence, I spent a lot of time looking at -- through things related to the case with an eye toward motion practice and we talked about this earlier and if the Court would *allow me to stay in through the motion part of the case* because right now, I'm pretty familiar with that. Otherwise, he is going to have to start over with this and it's going to be too close to this to have two of us working on the motions at this time.
>
> THE COURT: What's our motion schedule right now?

MR. GREENMAN: Our motions are due in March, Your Honor.

THE COURT: March?

MR. GREENMAN: And after having looked at all the information --

MR. COVERT: I think it's March 9th.

MR. GREENMAN: Is that okay? Okay.

THE COURT: I think Mr. Covert was indicating he wanted to stay with it in March, not move it up.

MR. COVERT: Pretty strongly, Your Honor.

THE COURT: We can keep that date. That's fine.

MR. GREENMAN: Thank you.

THE COURT: Do you anticipate evidentiary hearings, Mr. Covert, at this point in time?

MR. COVERT: I actually anticipate requesting evidentiary hearings. Yes, Your Honor.

THE COURT: Okay. All right. I don't think we'll set them today. We'll wait then. I just -- I know how hard it is to get a hold of people with their schedules.

MR. COVERT: Thank you.

THE COURT: Okay. Well, I'll allow that, Mr. Greenman. *Stay in through the motion and then, out.*

(*Id.* at 20-21 (emphasis added)). Thus, it would appear, based on this transcript, that Judge Roemer continued to allow three CJA assigned attorneys to represent Jenkins "through the motion part of the case." It is not clear whether the intent at the time was to allow for three attorneys through the filing of motions (as ordered with respect to LoTempio) or through the ultimate disposition of the motions. Moreover, Judge Roemer plainly deferred to the

attorneys' decision how to divide the work on behalf of Jenkins, and which attorneys would stay on the case through trial.

The Court notes that, in practice, all three attorneys have together represented Jenkins since their assignment in December 2016. In fact, at most of the appearances before the undersigned, Greenman and Deal have primarily argued on behalf of Jenkins. All three attorneys appeared at the suppression hearing before Judge Roemer, where Deal took the lead in cross-examining the Government's witness. (Dkt. 643 at 2, 57). All three attorneys appeared at the status conference before the undersigned on August 16, 2017, where the specifics concerning the trial and pretrial submissions were discussed. (Dkt. 733). Moreover, in the attorneys' various representations to the Court, including the more recently filed motions *in limine* directed to evidentiary issues at trial, all three counsel have been identified as representing Jenkins and submitting papers on his behalf. (*See, e.g.*, Dkt. 730 (Declaration of Covert dated August 12, 2017, stating that "Michael S. Deal, Esq.; Herbert L. Greenman, Esq.; and I represent the defendant, ANDRE JENKINS."); Dkt. 829 (Declaration of Covert dated October 20, 2017, stating "As this Court is aware, Herb Greenman, Michael Deal, and I represent Defendant Andre Jenkins on the instant prosecution and on his appeal of the denial of his motion to dismiss, which is pending before the Second Circuit with Docket Number 17-2372."); Dkt. 882 (Jenkins' motion *in limine* directed to evidentiary issues at trial, filed by all three attorneys, with Declaration from Deal dated November 22, 2017, indicating "Barry Nelson Covert, Esq.; Herbert L. Greenman, Esq., and I represent the defendant Andre Jenkins.")).

On Thursday, January 11, 2018—just five days before the trial was set to begin on Tuesday, January 16, 2018—Covert filed a motion to seal the motion for severance or adjournment; he also provided a copy of the motion for severance or adjournment to Chambers and the Government. (*See* Dkt. 982; Dkt. 990). In the motion for severance or adjournment, Covert asks the Court to sever Jenkins from the trial set to begin on January 16, 2018, or, alternatively, adjourn the commencement of the trial for 45 days. (Dkt. 990). Covert asks for severance or adjournment for two reasons: (1) the unanticipated length of the jury trial in a case before another district judge in the Western District of New York; and (2) an ongoing personal matter, which is the same matter that necessitated the assignment of Deal and Greenman in December 2016.[1]

On January 12, 2018, in chambers, the Court heard argument on the motion for severance or adjournment and indicated that it would deny the motion in a forthcoming Decision and Order. At that argument, Covert, Deal, and Greenman represented that Greenman's appointment was limited in scope—to pretrial motion practice—and that given the nature and complexity of the case, Jenkins ought to have at least two attorneys. The Government opposed Jenkins' motion to adjourn or sever. On January 13, and 14, 2018, Covert and the Government submitted supplemental information to the Court and counsel by email. (Dkt. 991; Dkt. 992; Dkt. 993).

---

[1] Because the Court has sealed Covert's declaration, which discusses the ongoing personal matter, the Court will discuss it only in general terms. The Court has referred to it as a "personal matter" since that is the language that Covert used when he publicly filed his initial motion before Judge Roemer. (Dkt. 359).

# MOTION FOR ADJOURNMENT OR SEVERANCE

## I. Standard Governing Requests for Adjournments

"[A] district court has 'a great deal of latitude in scheduling trials.'" *United States v. Griffiths*, 750 F.3d 237, 241-42 (2d Cir. 2014) (quoting *Morris v. Slappy*, 461 U.S. 1, 11 (1983)); *see also United States v. Budovsky*, No. 13cr00368 (DLC), 2016 WL 386133, at *10 (S.D.N.Y. Jan. 28, 2016); *United States v. Al Fawwaz*, 116 F. Supp. 3d 194, 209 (S.D.N.Y. 2015). This is so because of the inherent logistical difficulties in scheduling trials: "Not the least of [trial courts'] problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *Morris*, 461 U.S. at 11. Therefore, "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Id.* at 11-12 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

Correspondingly, "trial courts enjoy very broad discretion in granting or denying trial continuances." *United States v. Stringer*, 730 F.3d 120, 127 (2d Cir. 2013). "Appellate review of a trial court's refusal to delay trial is for abuse of discretion," *id.*, and an appellate court "will find no such abuse unless the denial was an arbitrary action that substantially impaired the defense," *id.* (internal quotation marks omitted) (quoting *United States v. O'Connor*, 650 F.3d 839, 854 (2d Cir. 2011)). "A defendant must show 'both arbitrariness and prejudice in order to obtain reversal of the denial of a continuance.'" *Id.* at 128 (quoting *United States v. Miller*, 626 F.3d 682, 690 (2d Cir. 2010)). "This test 'is a stringent one.'" *Al Fawwaz*, 116 F. Supp. 3d at 208-09 (quoting *United States v.*

*Ellenbogen*, 365 F.2d 982, 985 (2d Cir. 1966)). "The burden of showing" a substantial impairment of the defense "is on the party complaining of the lack of a sufficient continuance." *O'Connor*, 650 F.3d at 854; *see also United States v. Tin Yat Chin*, 476 F.3d 144, 146 (2d Cir. 2007) (concluding that a new trial was not required where the defendant was "unable to specify with any particularity how he was prejudiced by not receiving a longer [than one-day] continuance").

For the reasons set forth below, the Court denies Jenkins' motion.

## II. An Adjournment is Not Warranted

The Court set the trial date on January 17, 2017, one year in advance. (Dkt. 445). The Court set the trial date that far in advance not only because of its own busy trial calendar, but also because of the logistical difficulties inherent in scheduling and preparing for this complex, multi-defendant case, which involves several defense and Government attorneys and is estimated to last up to four months. *See Morris*, 461 U.S. at 11 (noting that the burden of "assembling the witnesses, lawyers, and jurors at the same place at the same time . . . counsels against continuances except for compelling reasons"). At present, four defendants are scheduled to go to trial starting January 16, 2018, all represented by defense attorneys with very busy practices. To account for this, the Court scheduled this trial one year ago as a date certain, to avoid any last minute scheduling issues and afford all attorneys and parties advance notice of the date selected for trial. Indeed, the undersigned has had contact from another district judge in this district, as well as a district judge in the Southern District of New York, concerning the scheduling of this trial, in view of other trials scheduled in front of those judges with some of the same defense attorneys.

The undersigned understands that those other district judges have scheduled their respective trials to accommodate for the previous scheduling of the trial in this case.

In addition, the undersigned's "duty station" is Rochester, not Buffalo, but because of the judicial vacancies in this district, the undersigned has been accepting assignments of Buffalo cases for several years. Arranging for the undersigned and her staff to be on trial in Buffalo for several months is a significant undertaking, and inevitably has had—and will have—an impact on the hundreds of other civil and criminal cases assigned to the undersigned. Again, to account for these challenges, the undersigned set a date certain for trial one year ago.

Jenkins' eleventh-hour request—filed late afternoon on the Thursday before the Tuesday when trial was set to begin—would be enormously disruptive considering that extensive planning has gone into preparing to summon hundreds of prospective jurors for this case.[2] In fact, another district judge in this courthouse has delayed the start of his criminal jury trial in order to accommodate the fact that hundreds of prospective jurors will be arriving at the courthouse for the start of trial in this case. Moreover, another Rochester-based district judge will be commencing a trial in Buffalo one week after this trial begins, facing all of the additional strain and logistical difficulties that are inherent in scheduling a trial away from one's normal duty station. Against this backdrop, the Court is particularly hesitant to adjourn the trial, as it would be disruptive not only to this Court, but also to

---

[2] The Court intends to summon approximately 150 prospective jurors each day during the first week, for a total of approximately 600 prospective jurors. Additional prospective jurors may need to be summoned the following week.

fellow district court judges, including one who, like this Court, must conduct trial away from his duty station.

Furthermore, an adjournment would also compromise the public's "interest 'in the expeditious disposition of criminal prosecutions.'" *Al Fawwaz*, 166 F. Supp. 3d at 220 (quoting *United States v. Keilly*, 445 F.2d 1285, 1288 (2d Cir. 1971)). This case has been pending against Jenkins for nearly two years, as the Indictment was filed on March 16, 2016. (Dkt. 33). Jenkins' arraignment took place shortly thereafter, on March 24, 2016. (Dkt. 52).

The primary argument advanced by Jenkins appears to be that Covert is unprepared for trial in this case because of unforeseen delays in another criminal trial in this district, *United States v. Green*, 1:12-CR-00083. (Covert Decl. ¶¶ 4-10). Jury selection in *Green* began on October 31, 2017, and, although that trial was expected to conclude around Thanksgiving, the jury is still deliberating as of January 16, 2018, the first day of jury selection in this case. (*Id.* at ¶¶ 4-6). Covert states that, because that trial has continued for far longer than anticipated, he is "backlogged" in his other cases and has not devoted any attention to trial preparation in this case:

> [Covert has] not been involved in any activities or preparations in relation to the instant matter since [he] began serious trial preparations for *US v. Green* in early October of 2017. [He] has not engaged in any document or witness review, including the extensive 3500 materials; [he] did not attend any preparatory conferences or meetings. [He] is not familiar with any of the electronic filings or Court rulings since early October of 2017.

(Covert Decl. ¶ 9).

However, Covert's argument fails to account for the fact that another attorney—Deal—will represent Jenkins at trial. (*See id.* at ¶ 1). Covert makes no representation that Deal is not prepared to proceed to trial on January 16, 2018. (*See generally id.*). The fact that Jenkins has multiple attorneys seriously undermines any argument that Covert's unpreparedness for trial will substantially impair the defense. *Cf. United States v. Novak*, 903 F.2d 882, 890 (2d Cir. 1990) (where defendant was represented by two persons, one of whom obtained admission to the bar through fraudulent means and had since been disbarred, and another local counsel who was excused from daily attendance at the defendant's trial, the Second Circuit concluded that the imposter's representation of the defendant was a *per se* violation of the Sixth Amendment's guarantee of assistance of counsel, but if the local counsel had been present and provided effective assistance at all critical stages of the proceedings, the defendant's Sixth Amendment right would have been protected); *see also Leslie v. Artuz*, 230 F.3d 25, 33 (2d Cir. 2000) (finding no violation of the defendant's Sixth Amendment rights when one of the defendant's multiple attorneys provided effective assistance at all critical stages of the proceedings); *United States v. Moore*, 228 F. Supp. 2d 75, 79 (D. Conn. 2002) ("Because Moore was represented by two attorneys, had Conti provided Moore with 'effective assistance at all critical stages, [Moore's] Sixth Amendment rights would have been protected," regardless of whether Chan's conduct satisfied the requirements of the Sixth Amendment." (quoting *Novak*, 903 F.2d at 890)), *aff'd*, 174 F. App'x 603 (2d Cir. 2006). Indeed, as a district court in the Western District of Michigan observed, "if a defendant was represented by two attorneys at trial, and one slept while the other remained awake and engaged, it could still be said

that the defendant received sufficient effective assistance because one of his attorneys was awake and effective." *United States v. Logan*, 257 F. Supp. 3d 880, 891 (W.D. Mich. 2017).

Applying the foregoing principles to the instant case, the Court can discern no substantial impairment to the defense if Covert has not prepared for trial at this time as he represents in his declaration. (Covert Decl. ¶ 9). Deal is also assigned to represent Jenkins at trial, in excess of what is required after the Government announced its intent not to seek the death penalty in Jenkins' case. *See United States v. Douglas*, 525 F.3d 225, 237-38 (2d Cir. 2008) (explaining that, "after the government's renunciation of any intent to seek the death penalty, [the defendant] was not entitled to representation by more than one government-funded attorney" but that a district court may allow dual appointment "out of a concern for fairness at the trial of a criminal offense" (internal quotation marks omitted)). Indeed, during an appearance before this Court on November 8, 2017, Deal requested that this Court designate him as lead counsel instead of Covert.[3] The Court has observed Deal's representation of Jenkins firsthand, including at the reopened suppression hearing, and the Court is confident that Deal is able to provide Jenkins with more than effective assistance. While the Court does not quarrel with the appropriateness of Judge Roemer assigning two—or even three—attorneys to represent Jenkins as was done in this case, the Court also fails to see any showing by Jenkins of substantial prejudice under the circumstances,

---

[3] Ultimately, the Court indicated to Deal that Covert was not designated as so-called "lead counsel" and Jenkins' attorneys were free to divide the work in any manner that they deemed appropriate.

particularly where Covert, while unable to devote time to this matter during the past few months, has been representing Jenkins since March 2016, along with two additional counsel since December 2016—all of whom are highly qualified and competent.

Moreover, although the Court appreciates that the *Green* trial has continued longer than anticipated and that, at least according to Covert, the delay is attributable to circumstances beyond his control, that trial date was selected on May 25, 2017, nearly four months after the Court scheduled the trial in the instant case. (*Compare* 1:12-CR-00083, Dkt. 434, *with* 1:15-CR-00142, Dkt. 445). Covert "had ample notice that he had scheduled nearly back-to-back trials; he was in no position to demand a continuance on the eve of trial when his estimates proved inaccurate." *United States v. John*, 243 F. App'x 660, 661 (2d Cir. 2007); *see also United States v. Francisco*, 642 F. App'x 40, 42-43 (2d Cir. 2016) ("[T]he district court based its decision on the interest of the defendants in a speedy trial, the demands on the court's schedule and docket, and defense counsel's failure to bring the conflict to the court's attention in a timely manner. Given these considerations, the district court was well within its discretion to deny a continuance."). And, despite the fact that the delays in *Green* likely were apparent for some time, the issue was not brought to the Court's attention until just recently. The undersigned has no recollection of the potential conflict being raised at the pretrial conference on December 12, 2017. At a further pretrial conference on December 27, 2017, Deal raised the issue of an adjournment for "a couple

of weeks" due, in part, to Covert's trial.[4] However, Covert, who was present at the December 27th conference, did not voice any concerns or requests himself.

Instead, Covert did not bring the possibility of a resulting adjournment request to this Court's attention until he filed the instant motion. The Court's review of the docket in *Green* reveals that jury selection began on October 31, 2017 (*see* 1:12-CR-00083, Dkt. 626), and it took a week for the jury to be sworn in (*see* 1:12-CR-00083, Dkt. 636). The trial did not go forward as scheduled on November 9th, 13th, 16th, 17th, or 21st; moreover, the afternoon session was adjourned on November 14th. (*See* 1:12-CR-00083, Dkt. 641; Dkt. 658; Dkt. 659; Dkt. 665; Dkt. 673). The trial resumed on November 27, 2017, which appears to have been only the third day of proof in a trial that was allegedly scheduled to be completed by Thanksgiving. (*See* 1:12-CR-00083, Dkt. 636, Dkt. 658, Dkt. 681). Moreover, there appears to have been no court conducted between December 1, 2017, and December 11, 2017. (See 1:12-CR-00083, Dkt. 689; Dkt. 703). Those significant delays should have made it apparent to Covert that the *Green* trial would not conclude in the anticipated timeframe and prompted him to bring that concern to this Court's attention, if not when the concern initially arose, at least during the pretrial conferences before this Court on December 12th and December 27th. Five days before trial is simply too late for Covert's adjournment request.

---

[4] Counsel for David Pirk joined in Deal's request at the December 27, 2017, appearance. The Court denied the request, reasoning at the time that the commencement of proof was still about 30 days away, in view of the time that would be devoted to jury selection in this case.

- 14 -

The Court is sympathetic to the ongoing personal matter that Covert also cites as a basis for his request for an adjournment, but that does not warrant adjournment of the trial. As the Court indicated at the appearance on January 12, 2018, it will work with Covert regarding the trial schedule in order to accommodate his need for time to attend to that personal matter. Indeed, the personal matter at issue was what prompted the assignment of both Greenman and Deal in the first place.

The Court understands that Covert must attend to the personal matter within the first week of trial (when deliberations will also be continuing in the *Green* trial). However, the first week of trial will be limited to simply addressing prospective jurors' hardship excuses. Defense counsel had proposed a robust *voir dire* process, with an extensive juror questionnaire and individual *voir dire*, to account for the pretrial publicity in this case. The Court has adopted many of Defendants' proposals[5] and will be conducting a *voir dire* more extensive than it has in any other case (and than is typically done in this district). The process will be conducted in phases, with the first phase simply questioning prospective jurors about potential hardships that would render them unable to serve for the approximate four-month trial, and then having unexcused eligible prospective jurors complete a written questionnaire. Only after the written questionnaires are collected and reviewed will jurors be summoned back to the courthouse for more extensive questioning, including possible individual questioning.

---

[5] On December 12, 2017, the Government expressed the view that the Court should handle *voir dire* the way it normally does. The Court agreed with Defendants that a more extensive process was necessary.

This type of hardship screening of jurors, which will be taking place in the coming week, does not even need to be conducted in the presence of counsel and the parties. *See United States v. Greer*, 285 F.3d 158, 168 (2d Cir. 2002) ("[H]ardship questioning is not a part of *voir dire*—and thus not a critical stage of the trial during which the parties and counsel must be present."); *see also United States v. Allen*, 788 F.3d 61, 73 (2d Cir. 2015) ("[T]he 'pre-screening' of jurors, which involve[s] a substantive inquiry into the jurors' qualifications," is to be distinguished "from the purely 'administrative impanelment process' . . . where jurors [a]re questioned, outside the presence of the defendant, on logistical matters such as personal hardship in serving." (quoting *Cohen v. Senkowski*, 290 F.3d 485, 490 (2d Cir. 2002)). Indeed, defense counsel initially suggested that the Court mail screening questionnaires to jurors for them to complete at home or alternatively for the Court to summon the prospective jurors to the courthouse to complete the questionnaires on-site several weeks before the trial. However, the Court had a number of concerns about that proposal, including that the process would have required every prospective juror in this case, including those who are unable to serve due to hardship, to complete questionnaires, and, in turn, generated potentially more than 600 completed questionnaires for review (as compared to the goal of 200 completed questionnaires to be reviewed from those who are able to serve).

Moreover, as the Court has explained to counsel, delaying the commencement of this hardship screening of prospective jurors would present many logistical difficulties. As mentioned above, because of this case, another district judge in this courthouse specifically delayed to the week of January 22, the summoning of a large number of prospective jurors

for his trial. Moreover, to accommodate the combining of the Bankruptcy Court Clerk's Office with the District Court Clerk's Office, the large Jury Assembly Room in this building will be taken out of commission for many months as of January 26, 2018. Although alternative space will be available in the interim, the unavailability of the Jury Assembly Room would complicate the process that the undersigned has proposed—of not only summoning large numbers of prospective jurors to the courthouse, but also then having them adjourn to the Jury Assembly Room to complete a questionnaire.

Notwithstanding the above, the Court will accommodate Covert's concerns to the extent that the Court will delay the commencement of opening statements and proof in this case until Monday, February 5, 2018. That is 25 days from the date that Covert filed his motion—and, although not the 45 days requested by Covert, it is, in the Court's view, a reasonable accommodation under the circumstances. In addition, as discussed with counsel on January 12, 2018, the Court will change the schedule of the trial. Initially, the Court had planned to meet for full days from Tuesday through Friday, so that the undersigned could handle cases in Rochester on Monday. However, although it will complicate the undersigned's management of her docket in Rochester, the trial will instead be conducted for half days for five days a week, running Monday through Friday from 9:00 AM until 1:30 PM. When the undersigned proposed this alternative schedule on January 12, 2018, all defense counsel, including Covert, expressed a preference for this schedule as it will

allow them more time for trial preparation during the presentation of the proof, and afford them an opportunity to attend to other matters.[7]

Finally, as discussed in depth above, Jenkins has had three counsel assigned to him since December 2016, and while counsel elected to divide up the work so that Covert and Deal were trial counsel, with Greenman handling motion practice and the appellate argument, the reality is that those choices were made by counsel, not the Court. Indeed, one might suggest that, once it became apparent that the *Green* matter was not progressing as planned, the more prudent course of action would have been for counsel to reassess their various roles in this case, as opposed to waiting until the eleventh hour to file a motion for an adjournment or severance. Nonetheless, the Court will consider any reasonable application pertaining to Greenman's continued role in this case, whether it be as trial counsel instead of Covert or in some other capacity, to the extent authorized under the Criminal Justice Act.

### III. Severance is Not Warranted

For the same reasons discussed above with respect to the request for an adjournment, the Court concludes that a severance is not warranted.

### CONCLUSION

For the reasons set forth above, the Court denies Jenkins' motion for a severance or an adjournment of the trial date. (Dkt. 990).

---

[7] The Government expressed a preference to adhere to the schedule initially proposed by the Court.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: January 15, 2018
      Buffalo, New York