UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

DAVID PIRK, ANDRE JENKINS a/k/a
Little Bear, TIMOTHY ENIX a/k/a Blaze,

Defendants.
_____

**DECISION AND ORDER**

1:15-CR-00142 EAW

## BACKGROUND

Defendants David Pirk ("Pirk"), Andre Jenkins ("Jenkins"), and Timothy Enix ("Enix") (collectively, "Defendants") are charged by way of a 46-count Second Superseding Indictment (Dkt. 33) ("Indictment") returned on March 16, 2016, with various crimes, including a conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), in connection with the operation of the Kingsmen Motorcycle Club ("KMC"). Jury selection commenced on January 16, 2018.

Among the issues raised by pretrial motions *in limine* was defendant Jenkins' argument, pursuant to Fed. R. Crim. P. 7(d), that the Court should strike "unnecessary, inflammatory and prejudicial surplusage" from the Indictment. (Dkt. 882 at 8-9). Specifically, Jenkins moved to strike paragraphs 2 through 24 of Count 1, as well as the Notice of Special Sentencing Factors With Respect to Count 1 and the Notice of Special Findings pertaining to Counts 19 through 22. (*Id.*). Pirk and Enix joined in Jenkins' motion. (Dkt. 881 at 3, 7 (Enix); Dkt. 884 at 3 (Pirk)). The Government opposed the

- 1 -

motion insofar as it was directed to the allegations set forth in Count 1.[1] (Dkt. 920 at 57-60).

At a pretrial conference on December 27, 2017, counsel for Jenkins confirmed that the motion was really intended to address what should be published to the jury, as opposed to striking allegations from the Indictment. The Court asked counsel to make further submissions on the issue of what portion of the Indictment should be published to the jury and how the Court should inform prospective jurors as to the nature of the charges during *voir dire*.

On January 8, 2018, counsel for Enix and Jenkins submitted letters[2] to the Court outlining their positions with respect to alleged surplusage in the Indictment and the publication of the Indictment to the jury. By letter dated January 8, 2018, the Government argued that the jury must find the special sentencing factors beyond a reasonable doubt for enhanced penalties to apply to Count 1 regarding Pirk and Jenkins, but agreed that it could remove any reference to "Sentencing" and simply have the redacted Indictment state "Notice of Special Factors." (Dkt. 1084). The Government further argued that the Court should deny any motion to strike surplusage. (*Id.*).

---

[1] The Government confirmed at the pretrial conference on December 27, 2017, that the Notice of Special Findings in Counts 19 through 22 was no longer relevant because the U.S. Attorney General had previously directed the U.S. Attorney's Office not to seek the death penalty in this case.

[2] The letters from counsel for Enix and Jenkins were not filed on the docket. Counsel are requested to file the letters so that the record is complete.

On January 13, 2018, the Government filed a Proposed Statement of the Case, wherein it argued that the reading of the redacted Indictment would suffice as a statement of the case, or alternatively that the Court should read either the entirety of Count 1, including the overt acts and a summary of the remaining counts, or Count 1 up to and including paragraph 30(n) of the Introduction and a summary of the redacted Indictment's remaining counts. (Dkt. 984). In that same filing, the Government objected to the proposed Joint Statement of the Case that had previously been submitted by defendant Thomas Scanlon. (*See* Dkt. 904-2).

On January 15, 2018, Defendants submitted an Amended Proposed Statement of the Case. (Dkt. 987). On February 5, 2018, Defendants then filed a further submission concerning their theory of the case, which they asked the Court to read during *voir dire* to the prospective jurors after summarizing the charges in the Indictment. (Dkt. 1042). The Government filed a response arguing that Defendants' request should be denied. (Dkt. 1045).

Ultimately, on February 7, 2018, during the final phase of jury selection in this case, the Court read Count 1 of the redacted Indictment through paragraph 30(n) and summarized the remaining counts in the Indictment. Consistent with the request from counsel for Enix, references to the co-defendants who had pleaded guilty were included within the redacted Indictment. The Court instructed the jury, in sum and substance, that the Indictment was not evidence and did not constitute proof of anything; rather, it was being published to advise prospective jurors of the nature of the charges and ascertain whether they could be fair and impartial. The Court declined Defendants' request to read their proposed statement

of the case and/or theory of defense. The Court took a similar approach with respect to its preliminary instructions. The purpose of this Decision and Order is to memorialize the Court's reasoning for its approach.

## ANALYSIS

### I. Motion to Strike Surplusage pursuant to Fed. R. Crim. P. 7(d)

Federal Rule of Criminal Procedure 7(d) provides as folllows: "Upon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). However, a defendant moving to strike surplusage must meet an "exacting standard," and the motion should be granted only where the allegations are inflammatory and prejudicial and not relevant to the crime charged. *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990). "[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." *Id.* (alteration in original) (internal quotation marks omitted).

Here, it is not entirely clear that Defendants still seek to strike allegations pursuant to Rule 7(d). Counsel for Jenkins, at the pretrial conference on December 27, 2017, confirmed that his motion really concerned the publication of the Indictment to the jury, as opposed to striking allegations. Moreover, although counsel for Enix raised the issue of Rule 7(d) in his letter submitted to the Court on January 8, 2018, he never filed a formal motion before the undersigned seeking this relief.[3]

---

[3] The issue had been raised previously before Magistrate Judge Roemer during pretrial motion practice, and Judge Roemer denied the motions without prejudice. (*See* Dkt. 568 at 20-23).

In any event, it is apparent that the Court should deny any request to strike surplusage. The allegations contained in paragraphs 2 through 24 describe the history of the KMC, including its locations, chain of command, general rules and objectives, and the various ways it allegedly carried out criminal activity. The allegations in these paragraphs describe the following: firearms and ammunition were maintained at KMC chapter clubhouses to defend the KMC against rival motorcycle gangs and to protect club proceeds; the KMC chapter clubhouses maintained a supply of untaxed cigarettes that were routinely sold for profit inside the clubhouses; illicit drug use and distribution were permitted inside the clubhouses; the KMC chapter clubhouses sold beer and liquor to generate income; gambling was maintained in some clubhouses; and KMC members' girlfriends and wives (referred to as "Old Ladies") assisted with the criminal activities. Finally, the allegations contend that in 2013, the KMC decided to become a 1% club, resulting in violence and other criminal activity involving those KMC members who wished to leave the club and join rival motorcycle organizations.

These allegations are highly relevant to the charged RICO conspiracy. At trial, the Government will undoubtedly offer evidence supporting these allegations in an effort to prove the RICO conspiracy charged in Count 1. Moreover, the allegations are not overly inflammatory or prejudicial, particularly when viewed through the lens of the crimes at issue in this case, including an execution-style double murder. Accordingly, there is no basis to strike these allegations. *See id.* ("In RICO cases, courts have refused to strike allegations of organized crime connections that serve to identify the 'enterprise' and the

means by which its members and associates conduct various criminal activities." (internal quotation marks omitted)).

## II. The Decision to Publish the Indictment Rests within the Court's Discretion

The Second Circuit has long held that "[i]t is not improper for the court to read the indictment in its entirety or portions thereof to the jury." *United States v. Press*, 336 F.2d 1003, 1016 (2d Cir. 1964). "The decision to do so rests in the sound discretion of the court." *Id.* In *Press*, the defendants challenged the trial court's reading of the indictment to the jury before it was impaneled, after it was sworn in, and in the course of the charge. *Id.* The defendants argued that "such repetition erroneously overemphasized the Government's case against them and that reversible error resulted when the jury was given the indictment to take to the jury room," but the Second Circuit disagreed, concluding that the "use of the indictment . . . was in all respects proper." *Id.* at 1016-17.

Despite the substantial discretion with which trial courts are vested, reading the entirety of the indictment to the jury is not always the best course. In *United States v. Kelly*, 349 F.2d 720 (2d Cir. 1965), the court held that, "[e]ven in somewhat abbreviated form[,] the reading of the indictment covered more than 50 pages of the trial transcript" and was "too long, too detailed and too involved . . . to suppose reading it would be helpful to the jury." *Id.* at 765. Some courts have held that, where the government has not yet presented evidence supporting certain allegations in the indictment, "the better course is to redact those allegations from the indictment" before reading or giving it to the jury. *United States v. England*, 966 F.2d 403, 408 (8th Cir. 1992) (internal quotation marks omitted); *see also United States v. Luffred*, 911 F.2d 1011, 1016 (5th Cir. 1990) (holding it was error

to read entirety of indictment that included a litany of overt acts about which no evidence had been presented). On the other hand, "in protracted cases involving numerous counts . . . reference to the indictment often serves as a helpful guide in delineating the issues the jury may be called on to decide." *United States v. Watts*, 934 F. Supp. 2d 451, 491 (E.D.N.Y. 2013) (quoting *Press*, 336 F.3d at 1016); *see also United States v. Fawwaz*, No. S7 98-CR-1023 LAK, 2015 WL 2114914, at *4-5 (S.D.N.Y. May 6, 2015) (finding no error where court read jury certain overt acts from indictment and redacted portions for which proof was not offered).

Of course, reading the indictment to the jury runs the risk that the jury will construe the indictment as evidence of guilt. *Press*, 336 F.3d at 1016. To guard against that misuse of the indictment, courts must provide limiting instructions cautioning the jury that the indictment is not evidence of the guilt of the defendants. *Id.* at 1017; *see also United States v. Scott*, 37 F.3d 1564, 1576 (10th Cir. 1994) ("Courts have held that it is not error to read an indictment to the jury as part of a court's instructions if the jury is instructed that the indictment is not evidence."); *United States v. Jones*, 587 F.2d 802, 805 (5th Cir. 1979) ("This court has held many times that it is not error for the trial judge to read the entire indictment to the jury if the judge also instructs the jury that the indictment is not to be considered as evidence.").

Here, the trial involving these defendants is anticipated to last many months. Nine counts are at issue with respect to these three defendants, including the first count involving allegations related to an extensive RICO conspiracy. Publishing the Indictment and informing the jury (and prospective jurors) as to the nature of the charges will aid the jury

in keeping track of the charges and in evaluating whether the Government has met its burden of proof on each particular element. Moreover, it will (and did) facilitate screening out any prospective jurors who would be unable to serve in a fair and impartial manner due to the nature of the charges.

However, at least until the conclusion of the Government's proof, the Court will refrain from reading the overt acts section of Count 1, as it is not clear at this point whether evidence will be admitted concerning all of those allegations. In other words, based on the Court's understanding of the case and the nature of the proof, it is evident that proof will be introduced concerning the allegations in paragraphs 1 through 30(n), much of which will be reflected in documentary evidence. However, at this stage, the same cannot be said of the remaining allegations in Count 1. Accordingly, the Court reserves decision on whether those portions of Count 1 will be published to the jury.

Moreover, the Court will ensure that the jury (and prospective jurors) are properly instructed that the Indictment is not evidence and is not proof of Defendants' guilt.

### III. Defense Theory of the Case

The Court declined Defendants' request to read during *voir dire*, and as part of preliminary instructions, the defense theory of the case. The defense theory of the case, in essence, asserts that the law does not permit someone to be guilty by association, that the KMC has hundreds of members in chapters all over the country which operated independently and attracts different types of people, and that any wrongdoing was the work of individual members and not the work of KMC or racketeering activity. (*See* Dkt. 1042).

The Second Circuit has "repeatedly recognized a criminal defendant's right to a charge which reflects the defense theory." *United States v. Rodriguez*, 222 F. App'x 61, 62 (2d Cir. 2007) (quoting *United States v. Durham*, 825 F.2d 716, 718 (2d Cir. 1987)). A defendant is "entitled to have instructions presented related to any theory of defense for which there is a foundation in the evidence, no matter how weak or incredible that evidence may be." *United States v. Urlacher*, 979 F.2d 935, 938 (2d Cir. 1992) (internal quotation marks omitted). However, a factual basis in the record must support the charge. *Id.* at 938. At the preliminary stage of a case, a defendant is generally not entitled to the presentation of his theory of the case. *See United States v. Tonawanda Coke Corp.*, No. 10-CR-219S, 2013 WL 672280, at *3 (W.D.N.Y. Feb. 22, 2013). Rather, the Court's determination as to whether to instruct the jury concerning any defense theory of the case must await conclusion of the proof and be assessed as part of the final charge. *See Rodriguez*, 222 F. App'x at 62 ("[W]e will vacate a conviction for failure to give a requested instruction only if: (1) the requested instruction represents a theory of defense with basis in the record that would lead to acquittal, (2) the theory is not effectively presented elsewhere in the charge, and (3) the requested instruction is legally correct in every respect.").

Similarly, the purpose of *voir dire* is not to educate the prospective jurors on the defense theory of the case, but rather to screen individuals who are unable to sit in a fair and impartial manner. In *United States v. Robinson*, 832 F.2d 366 (7th Cir. 1987), the Seventh Circuit affirmed the district court's denial of the defendant's request for particular questioning during *voir dire* and explained the purpose of *voir dire* as follows:

> [The defendant's] argument for a voir dire which would have educated the venire about this "black inner-city culture" theory misconstrues the purpose of voir dire. The constitutional (as opposed to the advocate's) purpose of voir dire is not to educate the veniremen about any particular facet of the case nor to condition them to embrace any theory. . . . Its role is simply to ensure that the jury to be impaneled will be an impartial one.

*Id.* at 368 (citing *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981)); *see also United States v. Sherman*, 551 F.3d 45, 51 (1st Cir. 2008) (noting, in upholding court's refusal to ask the defendant's list of propounded questions, that "[t]he function of voir dire is not to counsel prospective jurors on the rules and procedures of criminal law but rather to expose potential bias or prejudice").

The purpose of *voir dire* is not to give the parties an opportunity to prime jurors with particular theories of the case. The Court elected to read a portion of the Indictment during *voir dire* because it reflects the charges that the Government must prove beyond a reasonable doubt, and informing the prospective jurors as to the nature of the charges helps screen individuals who cannot sit on the case. In contrast, reading the defense theory of the case during *voir dire* risked confusing the jury about the burden of proof. In other words, the jurors will not be asked to evaluate competing theories as to the KMC's role and purposes—rather, their job is to evaluate whether the Government has met its burden of proof with respect to the charges in the Indictment. Moreover, Defendants' proposed defense theory focused on snippets of legal theories—such as the concept that there is no guilt by mere association—without providing the entire context of the law, which again, risked creating confusion for the prospective jurors. Accordingly, the Court opted not to instruct the prospective jurors on the defense theory of the case. Defense counsel may

address these issues during opening statements, but any instruction from the Court in this regard must await presentation of the proof and an appropriate assessment before the final charge.

## **CONCLUSION**

For the foregoing reasons, the Court denies the motion pursuant to Fed. R. Crim. P. 7(d) (Dkt. 882), and the Court further exercises its discretion to publish a portion of the Indictment to the jury as part of *voir dire* and preliminary instructions, but declines to instruct on the defense theory of the case at this stage.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: February 21, 2018
Buffalo, New York